# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NUDURA INC. and NUDURA SYSTEMS, INC., | : | |
| | : | |
| Plaintiffs, | : | |
| v. | : | C.A. No. 19-353-LPS |
| | : | |
| STRONGHOLD INSULATION SYSTEMS, INC., | : | |
| | : | |
| Defendant. | : | |

Kelly E. Farnan, RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE

Christopher J. Sorenson, Paige S. Stradley, and Karen L. Beckman, MERCHANT & GOULD P.C., Minneapolis, MN

      Attorneys for Plaintiffs Nudura Inc. and Nudura Systems, Inc.


George Pazuniak and Thomas H. Kramer, O'KELLY & ERNST, LLC, Wilmington, DE

R. John Bartz and Douglas C. Mezera, BARTZ AND BARTZ. P.A., Edina, MN

      Attorneys for Defendant Stronghold Insulation Systems, Inc.

## MEMORANDUM OPINION

February 4, 2020
Wilmington, Delaware

**STARK, U.S. District Judge:**

Pending before the Court are Plaintiffs Nudura, Inc. and Nudura Systems, Inc. ("Nudura" or "Plaintiffs") and Defendant Stronghold Insulation Systems, Inc.'s ("Stronghold" or "Defendant") claim construction disputes related to several terms in U.S. Patent No. 6,792,729 (the "'729 patent"). The '729 patent relates generally to an improved stackable foam panel. The parties submitted briefs (D.I. 36, 37, 41, 42, 46, 47) and Stronghold submitted an expert declaration (D.I. 39). The Court held a claim construction hearing on December 2, 2019, at which both sides presented oral argument. (D.I. 48 ("Tr."))

## I.    LEGAL STANDARDS

The ultimate question of the proper construction of a patent is a question of law. *See Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 837 (2015) (citing *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 388-91 (1996)). "It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (citation and internal quotation marks omitted). "[T]here is no magic formula or catechism for conducting claim construction." *Id.* at 1324. Instead, the court is free to attach the appropriate weight to appropriate sources "in light of the statutes and policies that inform patent law." *Id.*

"[T]he words of a claim are generally given their ordinary and customary meaning. . . . [which is] the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1312-13 (internal citations and quotation marks omitted). "[T]he ordinary meaning of a claim term is its meaning to the ordinary artisan after reading the entire patent." *Id.* at 1321 (internal quotation marks omitted). The patent "specification is always highly relevant to the

claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

While "the claims themselves provide substantial guidance as to the meaning of particular claim terms," the context of the surrounding words of the claim also must be considered. *Phillips*, 415 F.3d at 1314. Furthermore, "[o]ther claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment . . . . [b]ecause claim terms are normally used consistently throughout the patent." *Id.* (internal citation omitted).

It is also possible that "the specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such cases, the inventor's lexicography governs." *Phillips*, 415 F.3d at 1316. It bears emphasis that "[e]ven when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction." *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1372 (Fed. Cir. 2014) (quoting *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004)) (alteration in original) (internal quotation marks omitted).

In addition to the specification, a court "should also consider the patent's prosecution history, if it is in evidence." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996). The prosecution history, which is "intrinsic evidence," "consists of the complete record of the proceedings before the [Patent and Trademark Office] and includes the prior art cited during the examination of the patent." *Phillips*, 415 F.3d at 1317. "[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id.*

"In some cases . . . the district court will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period." *Teva*, 135 S. Ct. at 841. "Extrinsic evidence consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Markman*, 52 F.3d at 980. For instance, technical dictionaries can assist the court in determining the meaning of a term to those of skill in the relevant art because such dictionaries "endeavor to collect the accepted meanings of terms used in various fields of science and technology." *Phillips*, 415 F.3d at 1318. In addition, expert testimony can be useful "to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art, or to establish that a particular term in the patent or the prior art has a particular meaning in the pertinent field." *Id.* Nonetheless, courts must not lose sight of the fact that "expert reports and testimony [are] generated at the time of and for the purpose of litigation and thus can suffer from bias that is not present in intrinsic evidence." *Id.* Overall, while extrinsic evidence "may be useful to the court," it is "less reliable" than intrinsic evidence, and its consideration "is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Id.* at 1318-19. Where the intrinsic record unambiguously describes the scope of the patented invention, reliance on any extrinsic evidence is improper. *See Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1308 (Fed. Cir. 1999) (citing *Vitronics*, 90 F.3d at 1583).

Finally, "[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998). It follows

that "a claim interpretation that would exclude the inventor's device is rarely the correct

interpretation." *Osram GmbH v. Int'l Trade Comm'n*, 505 F.3d 1351, 1358 (Fed. Cir. 2007)

(quoting *Modine Mfg. Co. v. U.S. Int'l Trade Comm'n*, 75 F.3d 1545, 1550 (Fed. Cir. 1996)).

## II. CONSTRUCTION OF DISPUTED TERMS[1]

### A. "alternating projections and recesses"[2]

| Nudura |
|---|
| No construction necessary |
| Alternatively, "interchanging projections and recesses" |
| **Stronghold** |
| "a sequence of a projection followed by a recess followed by another projection followed by another recess without any intervening structure"[3] |
| **Court** |
| "interchanging projections and recesses" |

The Court agrees with Nudura that a person of ordinary skill in the art ("POSA") would

understand "alternating" to mean "interchanging," thus requiring that a projection be followed by

a recess and a recess to be followed by a projection. (D.I. 46 at 1-2) Consistent with Figure 1,

and contrary to Stronghold's originally-proposed construction, the pattern may begin with a

recess.

---

[1] On November 20, 2019, Stronghold withdrew its proposed constructions for the terms "in spaced and parallel relationship along a longitudinal direction," "each embedded longitudinally inside," "projecting from each of said extremities along the longitudinal direction," and "each being embedded into." (D.I. 40 at 1) Further, in its December 6, 2019 letter brief, Stronghold stated that it does not oppose Nudura's proposed construction of "the terminal surfaces extending along the bottom wall surfaces of the foam panels of the upper wall form abut on the terminal surfaces extending along the top wall surfaces of the foam panels of the lower wall form" as "the terminal surfaces of the head pieces located on the bottom surfaces of the upper wall form touch the terminal surfaces of the head pieces located on the top surfaces of the bottom wall form." (D.I. 47 at 1-2) The Court will adopt this uncontested construction.

[2] This term appears in claim 1 of the '729 patent.

[3] In its December 6, 2019 letter brief, Stronghold proposed a new construction for this term: "at least two projections and at least two recesses succeeding each other continuously." (D.I. 47 at 1)

Stronghold has not persuaded the Court to include the "without any intervening structure" requirement. No intrinsic evidence supports Stronghold's contention that "[i]f there were to be any structure between the projections and the recesses, then the two would not alternate." (D.I. 41 at 8) Stronghold's extrinsic evidence, several dictionary definitions of the term "alternate," does not warrant a conclusion that structures fail to "alternate" when a sequence is interrupted at one point by an intervening structure and then continues after this interruption. (*See* D.I. 41 at 8)

The Court recognizes that the Court presiding in *Polyform, A.G.P, Inc. v. Airlite Plastics Co.* construed the same term, "alternating projections and recesses" – but in a different patent (United States Patent No. 6,401,419) – as "a sequence of projections and recesses that are not interrupted by another structure." (D.I. 37 at 15 Ex. 3 at 5-7 (D. Neb. Oct. 15, 2008)) That court's conclusion was based on that patent's intrinsic evidence, which differs from the intrinsic evidence here.

"Both parties agree that the claims require there be at least two alternating projections and recesses on the top of the wall form and at least two alternating projections and recesses on the bottom of the wall form." (D.I. 46 at 1)

## B. "a terminal surface extending transversally and along a portion of a corresponding one of the top and bottom wall surfaces of the corresponding foam panel"[4]

| Nudura |
| --- |
| No construction necessary |
| Alternatively, plain and ordinary meaning |
| **Stronghold** |
| "a horizontal surface parallel and near to the top or bottom surface of the foam panel, located on and wider than the structure of the head piece oriented along the length of the wall form" |
| **Court** |
| Plain and ordinary meaning. |

---

[4] This term appears in claim 1 of the '729 patent.

Stronghold argues that the term "transversally" requires that the terminal surface lie at a 90-degree angle, insisting without persuasive explanation that "[w]e're lying across, so that means at a right angle."[5] (D.I. 48 at 35) However, a POSA would know that objects can extend from a longitudinal plane at many different angles, and Stronghold does not point to anything in the intrinsic record that requires the claimed invention's terminal surface extend at (and only at) a 90-degree angle. That a preferred embodiment disclosed in the specification includes a terminal surface lying at a 90-degree angle (D.I. 48 at 36-37) provides only minimal support for Stronghold, as "it is improper to read limitations from a preferred embodiment described in the specification – even if it is the only embodiment – into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004). Stronghold identifies no clear indication the patentee here intended to limit its claims to right angles. A POSA would understand this term to have its plain and ordinary meaning.

### C. "a connecting member for connecting longitudinally the anchor members of the pair together"[6]

| |
|---|
| **Nudura**<br>No construction necessary<br><br>Alternatively, plain and ordinary meaning |
| **Stronghold**<br>Means-plus-function<br>Function: connecting longitudinally the anchor members of the pair together<br>Structure: '729 patent: 5:11-28, 49-67; 6:1-22, 8:4-32 |
| **Court**<br>Plain and ordinary meaning. |

---

[5] Stronghold asserted at the Markman hearing that Nudura had previously agreed that the terminal surface must lie at a 90-degree angle (*see* Tr. at 33-35), but the Court agrees with Nudura (*see id.* at 39-40) that nothing in Nudura's briefing justifies this statement.

[6] This term appears in claim 1 of the '729 patent.

When a claim term does not use the word "means," it is presumed not to be a means-plus-function term, but this presumption may be overcome by showing that "the claim term fails to recite sufficiently definite structure or else recites function without reciting sufficient structure for performing that function." *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1348 (Fed. Cir. 2015) (internal quotation marks and alteration omitted). In analyzing whether a term is a means-plus-function term (governed by § 112, ¶ 6), "it is proper to consult the intrinsic record." *Inventio AG v. ThyssenKrupp Elevator Ams. Corp.*, 649 F.3d 1350, 1357 (Fed. Cir. 2011), *overruled on other grounds by Williamson*, 792 F.3d at 1339.

Claim 1 provides some detail about the structure of the connecting member. It establishes that the connecting member is located between the foam panels and anchor members and must be able to "connect[] longitudinally the anchor members of the pair [of foam panels] together." '729 patent at 8:44-57. By requiring a specific location and function for the connecting member, the claim language "provides insight into the required physical structure." *See Boston Sci. Corp. v. Cook Grp. Inc.*, 2017 WL 1364205, at *3 (D. Del. Apr. 12, 2017), *report and recommendation adopted*, 15-980 (D. Del. Sept. 11, 2017). Further, the specification discloses several embodiments of the connecting member and includes specific details about the connecting member's structure, shape, and composition. *See* '729 patent at 5:11-22, Figs. 3-4.

Stronghold has failed to overcome the presumption that § 112, ¶ 6 does not apply here. Instead, a POSA would understand "connecting member" to have its plain and ordinary meaning.[7]

---

[7] The Court has considered the declaration of Stronghold expert Christopher W.C. Bowness (D.I. 39) but does not find that this extrinsic evidence alters its conclusions.

**III.    CONCLUSION**

The Court will construe the disputed terms as explained above.  An appropriate Order follows.